IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN J. MARQUESS, et. al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE EMPLOYEES | : | |
| CREDIT UNION | : | NO. 09-4256 |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACOB P. HART                         DATE: August 31, 2010
UNITED STATES MAGISTRATE JUDGE

I.       Introduction

This case was brought by plaintiffs John Marquess, as the executor for the estate of William Marquess, and Jason Marquess to recover money that was withdrawn from a bank account created by William Marquess. The plaintiffs have asserted claims under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*. ("EFTA"), and for breach of contract.

A bench trial took place in this case before the undersigned on July 13, 2010. As explained in the following findings of fact and conclusions of law, which are set forth in narrative style, I have found that defendant, the Pennsylvania State Employees Credit Union ("PSECU") is liable to plaintiffs under EFTA. I will also award treble damages, as directed by the statute. However, I find in favor of PSECU on the breach of contract claims.

II.      Factual and Procedural Background

PSECU is a state-chartered credit union. See Exhibit D-1. Persons who fit within certain fields of membership may become members and hold accounts at PSECU. Trial Transcript ("Transcript") at 65. Each PSECU account has an account number and a Personal Identification Number ("PIN"). Id. Accounts that are accessible online also have a password. Transcript at 66.

PSECU offers an online home banking service and a self-service telephone line. Transcript at 66-67. In order to conduct a self-service telephone banking transaction, a person must know the account number and PIN. Id.

Plaintiff Jason Marquess is the son of defendant William Marquess. Transcript at 9. In August, 2004, an application was submitted to PSECU to open an account in the name of Jason Marquess. Exhibit D-1. The application contained Jason Marquess's name, birth date, and social security number, although the Philadelphia address and phone number listed were not correct. Transcript at 34-36, 40. The Howell Street address which was listed, and the phone number, actually belonged to William Marquess. Transcript at 34, 40. A Florida identification card with Jason Marquess's picture and signature was also submitted in connection with the application. Exhibit D-1. PSECU opened the account. Id.

On August 27, 2004, an "Account to Account Transfer Authorization" form was submitted to PSECU authorizing transfers to be made from the account in the name of Jason Marquess to a PSECU account held by his father, William Marquess. Exhibit D-3. It appeared to be signed by Jason Marquess. For some reason, a second Account to Account Transfer Authorization form, also authorizing transfers from Jason's to William's account was submitted on September 15, 2005. Exhibit D-4. That, too, bore what purported to be Jason's signature. Id.

On November 25, 2005, a form naming William Marquess as a joint owner of Jason's account was submitted to PSECU. Exhibit D-5. Again, it purported to be signed by Jason. Id. In December, 2005, an ATM card was issued for Jason Marquess on the same terms.

Crucially, in February, 2006, a form was submitted authorizing telephone and online transfers from the account in the name of Jason Marquess to an account in the name of David Marquess, Jason's brother (and William's other son). Exhibit D-7. The form was signed in the name of Jason Marquess. Id.

All of the forms described above listed Jason's address as the Howell Street address, which was actually William's residence. Jason was living in Florida at all relevant times. Transcript at 40. The signatures on the forms were all verified against each other by PSECU personnel, and found acceptable. Transcript at 76-80, Testimony of Susan Krause.

Then, on October 23, 2007, William Marquess died. Transcript at 10. PSECU employee Measie Fairfax received notice of William Marquess's death from the Department of the Treasury on October 30, 2007. Deposition Transcript of Measie Fairfax at 7-8. On November 1, 2007, Ms. Fairfax sent one letter, addressed to both Jason Marquess and David Marquess, and mailed to the Howell Street address, headed by the redacted account numbers for three accounts. Exhibit J-3. Although the accounts were not identified by owner in the letter, the account numbers were for (a) the account held individually by William Marquess; (b) the account apparently held jointly by William and Jason Marquess; and (c) a joint account held by William and David Marquess. Exhibit J-3. The letter explained certain forms, which were enclosed. Id.

John Marquess was named the administrator for the estate of his brother, William. Transcript at 10. As part of his duties, he contacted PSECU. Id. at 12. On November 9, 2007, he spoke to Ms. Fairfax. Exhibit B-1, Exhibit J-4. She told him only about the account held solely by William Marquess. Transcript at 14, and Exhibit J-4.

3

John Marquess continued to be in touch with Ms. Fairfax. On November 26, 2007, he wrote to her:

> Dear Mrs. Fairfax:
>
> You may recall, in our conversation, I advised you that neither I nor any potential heir is aware of any accounts that my brother may have owned or had an ownership interest. In short, we "don't know what we don't know" and I therefore need PSECU to disclose to me the following: any and all accounts in which my brother, William A. Marquess, had any ownership interest, **including, but not limited to**, individual accounts, CD accounts, IRA accounts, savings or checking accounts he owned individually, accounts he owned **with or without Rights of Survivorship**, **joint accounts**, and accounts of any nature whatsoever, and any Safe Deposit Boxes.
>
> If he had any such accounts, **even accounts with Rights of Survivorship** with any of his heirs, I can represent to you that neither I nor any such heir is aware of any such account. In short, we need PSECU to disclose to me the source and nature of any accounts.

Exhibit B-3 (emphasis supplied). Nevertheless, this letter did not lead to the disclosure of the apparent joint account in William's and Jason's names. Transcript at 18.

On January 22, 2008, an individual called PSECU on the telephone. Exhibit J-5. The caller identified himself as Jason Marquess, and said: "I talked to my brother recently who just found out that he had an account with PSECU through [*sic*] my father had set it up. He is recently deceased. He had to like go through a whole bunch of stuff to find out that he had it. And he told me that I have one too and I have no way of finding how." Id.

He later said: "I didn't know [the account] existed until maybe last week my brother let me know he had one. And I have one. He looked at his online and he told me when he was going through transferring funds, there was an account with my name on it and that he could have transferred funds into." Id.

4

Ultimately, it was decided that the PSECU employee, Tina Powell, would send the caller the account number and PIN number for the account, and mail it to William Marquess's former address, from which, as the caller assured her, it would be forwarded to Jason's sister's address. Id. She did this. Deposition Transcript of Tina Powell at 29.

On February 1, 2008, PSECU received a second call from a person identifying himself as Jason Marquess. Exhibit J-6 (Transcript of Telephone Call). He stated that he did not have the password needed to use the online account. Id. The PSECU employee to whom he spoke changed the password to Jason Marquess's birth date, without mentioning the specific birth date on the phone. Id.

On the same date, $25,000.00 was electronically transferred from Jason Marquess's money market account to David Marquess's account. Exhibit J-1 at Bates Stamp 0088. The address on the account was also changed from William Marquess's former address to David Marquess's address. Exhibit J-12 at ¶ 20, Transcript at 34. In two subsequent transactions, the amounts of $354.74 and $514.43 were also electronically transferred from Jason's account to David's. Exhibit J-1 at Bates Stamp 0091 and 0092.

On September 25, 2008, John Marquess received a letter from the Commonwealth of Pennsylvania, addressed to Jason Marquess, and notifying him of inheritance tax due on the joint account in the names of William and Jason Marquess. Transcript at 17; Exhibit D-14. John Marquess was not previously aware of the existence of this account. Transcript at 18. Neither was Jason Marquess. Transcript at 30.

Jason Marquess first contacted PSECU about the joint account on October 14, 2008. Transcript, Testimony of Susan Krause, at 70. Two days later, Susan Krause, the financial crimes investigator for PSECU, told Jason that the account existed but that almost all of the

funds had been transferred to David Marquess's account. Id. at 70; Exhibit D-13. Jason told Ms. Krause that he had just learned from his uncle of the existence of the account. Transcript at 70.

Ms. Krause then pulled up on her computer the images of documents related to the account, and noted that there were four pieces of identification for Jason submitted at the time the account was opened. Id. at 71. She testified: "He said he didn't know anything about it. And I said, well, you were twenty-three years old at the time this account was opened. How could you not know about it? And he said he signed anything his dad put in front of me [*sic*]." Id. Nevertheless, by November 19, 2008, PSECU knew of Jason's position that he "categorically denie[d] that he ever signed any documents or that he admitted signing any documents." Exhibit J-9.

Apparently, all parties soon concluded that David Marquess had misappropriated the money from the joint account in the names of William and Jason Marquess, since Ms. Krause noted that on October 21, 2008, after speaking with PSECU's legal department, she told Jason that "the issue is between he [*sic*] and his brother." Exhibit D-13. Ms. Krause told Jason that she would work with the police in prosecuting a claim against David Marquess, but that the bank would not reimburse the money. Id. This was the position PSECU continued to take in correspondence with John Marquess, who was then acting as Jason Marquess's legal representative. Exhibit J-12, Letter of December 11, 2008 from Helen Gemmill, counsel for PSECU to John Marquess.

This case was filed on September 21, 2009. During litigation, plaintiffs obtained copies of the documents in the account file. At that point, Jason Marquess realized that his signature had been forged on these documents. Transcript, testimony of Jason Marquess, at 35 ("Nothing

on any of these papers is my signature"). Other handwriting on the documents was recognizably that of William Marquess. Id.

PSECU concedes that William Marquess opened the account at issue without the knowledge of Jason Marquess, and that he signed Jason's name where it was required. Defendant's Proposed Findings of Fact and Conclusions of Law at ¶ ¶ 17, 26, 29, 36, 44, 49, 56, 66.

III.     Discussion

A.      Plaintiffs' Claims Under The Electronic Funds Transfer Act

1.      EFTA

The Electronic Fund Transfers Act, 15 U.S.C. § § 1693a-1693q, and its implementing regulations, ("Regulation E"), 12 CFR § § 205.1 - 205.18, (collectively "EFTA"), govern the responsibilities of financial institutions and consumers with respect to electronic fund transfers. Its primary purpose is "the provision of individual consumer rights." 15 U.S.C. § 1963 (proposed changes are pending which do not affect this case). The EFTA is a remedial statute to be accorded a broad, liberal construction in favor of the consumer. Clemmer v. Key Bank National Ass'n., 539 F.3d 349, 353 (6th Cir. 2008).

Plaintiffs point to § 205.6 in arguing that PSECU wrongfully failed to recredit Jason Marquess's account with the money the parties have agreed was stolen by David Marquess. That section, entitled "Liability of consumer for unauthorized transfers," states:

> (a) *Conditions for liability*. A consumer may be held liable, within the limitations described in paragraph (b) of this section, for an unauthorized electronic fund transfer involving the consumer's account only if the financial institution has provided the disclosures required by § 205.7(b), (2), and (3). **If the unauthorized transfer involved an access device, it must be an accepted access device and**

7

**the financial institution must have provided a means to identify the consumer to whom it was issued.**

12 CFR § 205.6 (bold supplied).

Plaintiffs also point to the following definitions for "access device" and "accepted access device":

> (a)(1) *Access device* means a card, code, or other means of access to a consumer's account, or any combination thereof, that may be used by the consumer to initiate electronic fund transfers.
>
> (2) An access device becomes an *accepted access device* when the consumer:
>
> > (i) Requests and receives, or signs, or uses (or authorizes another to use) the access device to transfer money between accounts or to obtain money, property, or services;
> >
> > (ii) Requests validation of an access device issued on an unsolicited basis; or
> >
> > (iii) Receives an access device in renewal of, or in substitution for, an accepted access device from either the financial institution that initially issued the device or a successor.

12 CFR § 205.2.

It is also relevant that negligence by the consumer, besides a failure to notify the bank, does not affect the bank's liability in this context. The Official Staff Interpretations relating to EFTA read, in relevant part:

> *6(b) Limitations on Amount of Liability ...*
>
> > 2. *Consumer Negligence.* Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN number on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.

12 CFR Pt. 205, Supp.1, § 205.6.

Plaintiffs maintain that PSECU is liable to one or both of them because the electronic transfers David made out of Jason's account were made by means of an "unaccepted access device." In this case, the "access device" was the combination of the account number and PIN, which permitted the transfers. The device was "unaccepted", as defined by the statute, because Jason neither requested nor received it.

2. <u>Jason Marquess May Recover Under EFTA</u>

The position that PSECU took before trial, and to which it still seems to partially adhere, was that the plaintiffs should pursue David Marquess and leave PSECU alone. This argument is untenable. Every single case of an unauthorized electronic funds transfer involves a third party who misappropriated funds. It is irrelevant that plaintiffs in this case knew the identity of the wrongdoer. It is surely not uncommon for an access device to be stolen by a known individual, such as a troubled relative, or dishonest babysitter or housecleaner. EFTA makes no exception in the case of a known thief. It places the burden of replacing the stolen funds squarely on the bank, except to the extent specified in the statute.

Indeed, PSECU conceded at trial that, as I then phrased it: "If the account was legitimate, that is, if it was actually opened by Jason as the paperwork would appear and a third party stole it", then, under EFTA, PSECU would have had to reimburse the account. Transcript at 59-60.

Thus, instead of arguing – as PSECU did pretrial – that this issue is between Jason and David, it now argues that there can be no EFTA case because neither William nor Jason had a legitimate relationship with the bank. William's contractual relationship was vitiated by his own fraud and forgery. Jason simply never entered any relationship with the bank. Jason admitted at trial that he never opened a PSECU account, and never intended to do so. Transcript at 47-48.

9

Nevertheless, the EFTA definition of a "consumer" is very broad, specifying only that a consumer must be "a natural person." 12 CFR § 205.2(e). It does not specifically require the consumer to be a depositor or party to a contract with the bank. Thus, William and Jason do meet EFTA's minimal criterion.

PSECU points out that in some places, EFTA seems to assume that the consumer has a relationship with the bank, such as where it states that the statute covers "any electronic funds transfer that authorizes a financial institution to debit or credit **a consumer's account**." 15 U.S.C. § 1693a(2). An Official Staff Interpretation for § 205.3 states: "The requirements of the regulation apply only to an account for which **an agreement for EFT services to or from the account has been entered**." 12 CFR Pt. 205, Supp. 1 § 205.3 (emphasis supplied).

Undoubtedly, the ordinary unauthorized funds transfer case involves an individual with an account created through direct contact with the bank. However, PSECU is putting more weight on these quotations than they can bear. These quotations do not purport to define the term "consumer;" instead, they define the type of transaction covered by EFTA. In any event, the Official Staff Interpretation for § 205.3 is cast in the passive tense. Jason did not enter an agreement for EFT services, but such an agreement *was entered* by William Marquess.

Moreover, as PSECU points out, "in the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress." United States v. American Trucking Ass'n., 310 U.S. 534 (1940). EFTA is a consumer protection statute, and I am reluctant to imply a meaning into regulatory language which would preclude an action by an injured individual. PSECU has not argued in this case that Jason Marquess committed any fraud with respect to this account. I conclude, therefore, that on

the specific and unusual facts in this case, Jason Marquess should be considered a "consumer" entitled to EFTA protection.

My conclusion in this regard is strengthened by the fact that PSECU has treated this account as Jason's ever since William Marquess's death. In his first contact with PSECU, and thereafter, Jason Marquess stated clearly that he had not known of the existence of the account. Exhibit J-4. Although Jason first said he might have signed the bank documents, he very soon denied having done so. Exhibit J-9. Despite this, PSECU insisted that Jason became the sole owner of the account at his father's death. Exhibit J-12 at ¶ 9. Even at the time of trial, PSECU was sending account statements to Jason. Transcript at 32, Testimony of Jason Marquess.

Thus, Jason is entitled to be treated as a "consumer" with respect to PSECU. Further, I do not find that William's fraud deprives Jason of EFTA protection. William's fraud was temporally and factually separate from David's unauthorized electronic funds transfer. As PSECU has pointed out, William's actions did facilitate the theft in one way: because PSECU did not have Jason's real address, Meacie Fairfax sent a letter confirming the existence of the joint accounts to an address where David had access to it, but Jason did not. However, this is merely the background story to the subsequent unauthorized transfers made by David, and it was these transfers which brought EFTA into play.

By the same token, I am not impressed by PSECU's argument that this case does not even involve an electronic funds transfer because David Marquess's actions included several person-to-person interactions with PSECU personnel. Here again, David's telephone conversations are parts of a story which later culminated in the electronic transfers which bring this case under EFTA.

11

The cases PSECU cites do not support its position. Both <u>Kashanchi v. Texas Commerce Medical Bank, N.A.</u>, 703 F.2d 936 (5th Cir. 1983) and <u>Davis v. Washington Mutual, Inc.</u>, 233 F.R.D. 247 (D. Conn. 2005) simply confirm EFTA's provision that funds transfers initiated by personal contact with a bank employee are not covered by the statute. 15 U.S.C. § 1963a(6)(E). In each of these cases, funds were withdrawn solely by means of a telephone conversation. There was no question of the use of an electronic access device. Here, by contrast, the fund transfers were not made by a telephone call or other personal contact. They were made by electronic home banking which did not require any personal contact.

PSECU has mangled the facts of a third case, <u>Schroeder v. Capital One Financial Corp.</u>, 665 F. Supp. 2d 219, 224 (E.D.N.Y. 2009). According to PSECU, it was decided in <u>Schroeder</u> that "EFTA would not apply to a transfer that was initiated by phone call, even though the transfer was completed after a subsequent facsimile directing the transfer was received by the bank." This is simply not true. In <u>Schroeder</u>, the court denied the defendant's motion for summary judgment on an EFTA count because there was a factual dispute about whether the transfer of funds at issue was initiated by a telephone call – in which case "it is likely that the EFTA does not apply", or, alternatively, by a facsimile transmission. 665 F. Supp.2d at 224. Neither party claimed that there was both a phone conversation *and* a facsimile.

In the present case, the fund transfers at issue were initiated electronically, solely by the use of an unaccepted access device. For that reason, EFTA applies. I will enter judgment in favor of Jason Marquess under EFTA, and direct PSECU to reimburse him for the money removed in three electronic fund transfers in the amounts of $25,000.00, $354.74, and $514.43.

3. Treble Damages

EFTA contains the following provision:

(e) Treble damages

If in any action under section 1693m of this title, the court finds that –

> (1) the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in subsection (c) of this section, and the financial institution (A) did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error; or
>
> (2) the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation ... then the consumer shall be entitled to treble damages under section 1693m(a)(1) of this title.

(f) Acts constituting error

> For the purpose of this section, an error consists of –
>
> > (1) an unauthorized electronic fund transfer; ...

15 U.S.C. § 1693f(e) and (f).

Because of the statute's use of the phrase "the customer **shall be** entitled to treble damages," I have no discretion as to whether to award such damages if I find the statutory criteria to be met. I have reluctantly determined that PSECU "knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation."

As represented in PSECU's post-trial submission, it failed to recredit Jason's account because:

> PSECU reasonably concluded that the transfers were not unauthorized electronic

fund transfers, as defined in 16 U.S.C.A. § 1693a(11). PSECU reasonably
believed that the transfers were initiated by David Marquess with authority from
Jason Marquess, or that Jason Marquess had furnished David Marquess with
means to access the account. Moreover, PSECU reasonably believed that David
Marquess may have been acting in concert with Jason Marquess. Under any of
these circumstances, the transfers did not qualify as unauthorized electronic
transfers. 15 U.S.C.A. § 1693a(11); 12 CFR 205.2(m).

Defendant's Proposed Findings of Fact and Conclusions of Law, docketed as Document 35, at pp. 27-28.

Indeed, these were among the positions taken by counsel during its investigation of this matter. Exhibits J-12 and J-13. However, they were not reasonable beliefs based on evidence available to PSECU. Counsel wrote to John Marquess:

PSECU is not convinced that Jason had no role in the transfer. In particular, PSECU has a reasonable basis to believe that Jason was complicit in the transfer given the familial relationship, Jason's lack of credibility in claiming that he knew nothing about the existence of the account despite the many documents he signed in connection with the account, and Jason's unrevoked written authorization for the transfer of funds from his account to David's account.

Exhibit J-14 (Letter of December 29, 2008).

Clearly, the most PSECU had was an unfounded hunch, or suspicion. This may have been reasonable as far as it went, but it is not a conclusion based on evidence. Over a month after PSECU was notified in certain terms that Jason denied signing any of the documents, it persisted in basing its position on the fact that he did sign them. Exhibit J-10 (Letter from John Marquess to PSECU of November 19, 2008). Yet PSECU never actually pursued evidence that Jason was involved in the withdrawals, whether by seeking to determine whether Jason recently spent a large sum of money, by obtaining the services of a handwriting expert, by questioning David, or in any other way. On the contrary, PSECU hampered the investigation of this crucial

14

point by failing to forward copies of the relevant bank documents so that Plaintiffs could see the signatures. Id. ("Despite my requests for documents, and my representation of my client, you have not sent me anything").

The fact that PSECU never searched for evidence of wrongdoing by Jason is also strongly suggested by its admission at trial that Jason did not sign the account documents. It seems that PSECU simply adhered to its hunch, never sought to prove or disprove it, and then dropped it when it became imperative to provide evidence. Since 15 U.S.C. § 1693f(e)(2) applies here, I have no choice but to award Jason Marquess treble damages.

B. Breach of Contract

Because I have awarded Jason Marquess relief under EFTA, there is little need to discuss the breach of contract claims in much detail. However, for the purpose of officially disposing of these claims, I will deny them, since there is clearly merit to PSECU's argument that William Marquess could not bring a breach of contract action against an institute upon which he practiced fraud. Moreover, it would be difficult to argue that Jason Marquess had a breach of contract action against an institution with which he never contracted.

IV. Conclusion

For the reasons set forth in the findings of fact and conclusions of law set forth above, I find in favor of plaintiff Jason Marquess on his EFTA claim, and will direct defendant PSECU to pay treble damages as permitted by that statute. Jason Marquess is also entitled to an award of costs and a reasonable attorney's fee under 15 U.S.C. § 1693m.

On all other claims, I find in favor of PSECU.

BY THE COURT:

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE